UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K. C., et al., <br><br>        Plaintiffs, <br><br>v. <br><br>TOWN OF ATHERTON, et al., <br><br>        Defendants. | Case No. 24-cv-00507-RFL <br><br>**ORDER GRANTING MOTIONS TO DISMISS** <br><br>Re: Dkt. Nos. 73, 75 |

**I.    INTRODUCTION**

This lawsuit is brought by minor Plaintiffs K.C. and D.B., alleging that Town of Atherton police officers subjected them to an unlawful arrest, used excessive force, and conducted a warrantless search and seizure, after responding to a call from Menlo-Atherton High School ("MAHS") staff.  Plaintiffs allege that MAHS staff, for its part, failed to follow a behavior intervention plan for K.C., who has an intellectual disability and an emotional disturbance impairment.  Rather than deescalate an interaction with K.C., MAHS staff allegedly ordered K.C. to leave, called the police—leading to his arrest—and later searched K.C.'s education records and disclosed private information with the police to be used for a potential prosecution of K.C.  K.C. and D.B have sued the Town of Atherton and several of its officers, including Officer Dimitri Andruha.  They have also sued Sequoia Union High School District and two of its employees, including MAHS vice-principal Stephen Emmi.

As relevant to this Order, as the Second Cause of Action of the Third Amended Complaint, K.C. asserts a 42 U.S.C. § 1983 claim for unlawful search and seizure under the Fourth Amendment against Andruha and Emmi related to the disclosure of information from

1

K.C.'s educational file to the police. (Dkt. No. 71 ("TAC") at 15.)[1] Emmi and Andruha ("Defendants") both move to dismiss the Second Cause of Action. (Dkt. Nos. 73, 75.) For the reasons explained below, the Motions are **GRANTED**. While the conduct alleged is troubling and may have violated federal privacy laws, the TAC does not plausibly allege that Defendants violated K.C.'s constitutional rights by disclosing the information at issue. The educational files in question are not alleged to contain information in which K.C. had a sufficiently reasonable expectation of privacy to trigger the Fourth Amendment's requirement that the police to obtain a warrant.

## II.     BACKGROUND

As relevant to this Order, the TAC alleges that at the end of the school day on April 28, 2023, K.C., a 16-year-old boy attending MAHS, went to the principal's office to retrieve a water toy that had been confiscated earlier that day. (TAC ¶ 23.) Emmi allegedly refused K.C.'s request for the water toy in a "demeaning and confrontational manner," speaking to K.C. "loudly," physically pushing K.C., and causing K.C. to become emotionally distressed. (*Id.* ¶¶ 24.) The TAC alleges that K.C. experiences "anxiety and depression and has deficits in auditory processing, short term memory, executive functioning, visual motor integration skills, and social language." (*Id.* ¶ 21.) K.C. is part of MAHS's Successful Transition Achieved with Responsive Support ("STARS") program—which provides "academic, behavioral, and social/emotional special education support"—and has an Individualized Education Program ("IEP"). (*Id.* ¶¶ 1, 22.) Pursuant to these programs, if K.C. became "dysregulated," staff were supposed to use de-escalation strategies, contact a STARS teacher, and not contact the police. (*Id.*)

The TAC alleges that neither Emmi nor any MAHS staff attempted de-escalation strategies, and did not contact a STARS teacher, on April 28, 2023. (*Id.* ¶¶ 24–25.) Instead, staff called the police. (*Id.* ¶ 25.) The police located K.C., who is Black, waiting for the bus. (*Id.* ¶ 26.) An officer then allegedly "slammed [K.C.] into the ground," "shoved a knee into his back while handcuffing him," "dragged" him to the police car, and took him to the police station.

---

[1] All citations to page numbers refer to ECF pagination.

(*Id.* ¶¶ 27–29.)  The police report related to the incident allegedly includes a copy of (i) a "Person Summary Report ["PSR"] that contained [] K.C.'s personal identifying information, including his student ID and contact information," and (ii) "a Behavior Detail Report ["BDR"] that details minor K.C.'s behaviors exhibited at MAHS since 9th grade."  (*Id.* ¶ 33.)  Both documents were allegedly taken from K.C.'s MAHS education file, without his or his parents' consent in violation of the Family Educational Rights and Privacy Act ("FERPA").  (*Id.*)  Andruha allegedly reported that he received the BDR for inclusion in the police report from "school administration" on May 2, 2023.  (*Id.* ¶ 34.)  The TAC alleges that the PSR and BDR were disclosed to the police by Emmi.  (*Id.*)

Plaintiffs allege that Andruha "acted in concert with [Emmi] to inappropriately obtain . . . [K.C.'s] confidentially protected reports" and use them to "bolster facts in support of criminal charges against [K.C.]"  (*Id.* ¶ 48.)  No warrant or subpoena was issued authorizing the police to obtain K.C.'s files from the school.  (*Id.*)  The TAC alleges that this conduct constitutes "an unreasonable search and seizure of Plaintiff K.C.'s confidential school records and inva[sion of] his privacy."  (*Id.* ¶ 49.)

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quotation omitted).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the

reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## IV.     DISCUSSION

### A.     K.C. Is Not Asserting a Disguised FERPA Claim, and the Special Needs Doctrine is Inapplicable

As an initial matter, Defendants assert two reasons why the Court should not reach the merits of K.C.'s claim that the search and seizure of his education records violated the Fourth Amendment because it was warrantless: (1) that K.C.'s claim should be treated as a disguised claim under FERPA, which does not confer enforceable rights, and (2) that the seizure and search of K.C.'s files was justifiable as a special needs search. Neither of these doctrines provides a basis for refusing to reach the merits of K.C.'s claim.

The Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, was passed by Congress to "assure parents of students . . . access to their educational records and to protect such individuals' rights to privacy by limiting the transferability of their records without their consent." *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67–68 (1st Cir. 2002) (quoting 120 Cong. Rec. 39862 (1974) (joint statement of Sens. Pell and Buckley)); *see also United States v. Miami Univ.*, 294 F.3d 797, 806 (6th Cir. 2002) ("For the last quarter of a century, [] FERPA has helped protect the privacy interests of students and their parents."). However, although K.C.'s records appear to be protected by FERPA, the parties agree that K.C. cannot assert a section 1983 claim based on a FERPA violation. (*See* Dkt. No. 76 at 10–11 ("K.C. is not seeking to enforce rights under FERPA"); Dkt. No. 77 at 10 (same).) That is because "FERPA's nondisclosure provisions fail to confer enforceable rights," as the Supreme Court found in *Gonzaga University v. Doe*, 536 U.S. 273, 287 (2002). Instead, K.C. has brought a Fourth Amendment claim. Defendants argue that the Court should extend *Gonzaga*'s holding, and find that K.C.'s Fourth Amendment unlawful search and seizure claim is barred because it is a disguised claim for violation of FERPA. (Dkt. No. 73 at 8–9; Dkt. No. 75 at 8.)

4

K.C.'s claim is not barred under *Gonzaga*. K.C. alleges that Defendants are state actors, and that they searched for and seized confidential records from his educational file for purposes of a criminal investigation and prosecution. (TAC ¶ 48.) He further alleges that the search was without a warrant and without satisfying a warrant exception, and therefore was an "unreasonable" invasion of "his privacy." (*Id.* ¶ 49.) The fact that K.C. supports one element of his Fourth Amendment claim—that he had a reasonable expectation of privacy in the records at issue—in part by reference to federal statutory privacy protections does not transform his claim into a disguised FERPA claim. The Fourth Amendment provides protections that exist independently of FERPA, and Defendants may not avoid scrutiny for actions that potentially violate the Fourth Amendment simply because its protections overlap with FERPA's or can be applied to the same educational files.

Defendants argue that, if the claim is not barred by *Gonzaga*, the "special needs" doctrine should apply to the alleged search and seizure. (Dkt. No. 78 at 6–8; Dkt. No. 79 at 5.) Under the special needs doctrine, administrative searches may be executed without a warrant or probable cause "when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Perez Cruz v. Barr*, 926 F.3d 1128, 1139 (9th Cir. 2019) (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995)). The doctrine has been applied to public school officials' administrative searches of students. *Id.* (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985)). However, under the special needs doctrine, a prerequisite for its applicability is the existence of a "need" separate from "the normal need for law enforcement." *Greene v. Camreta*, 588 F.3d 1011, 1026 (9th Cir. 2009) (identifying a separate "need" is a "threshold inquiry"), *vacated in part on other grounds by*, 563 U.S. 692 (2011), *and vacated in part on other grounds by*, 661 F.3d 1201 (9th Cir. 2011).

Defendants do not identify any allegation showing a separate need supposedly served by the alleged search and seizure of the school records at issue. (Dkt. No. 78 at 8 ("the TAC contains no allegations regarding the purpose of the alleged disclosure by Emmi").) To the contrary, the TAC alleges that the unlawful search and seizure of K.C.'s records occurred after

5

K.C. had been arrested and taken to the police station, and that Andruha and Emmi acted "in concert," for the sole purpose of "bolster[ing] facts in support of criminal charges against [K.C]." (Dkt. No. 71 ¶ 48.)  When the main purpose of a search is to gather evidence for use in subsequent criminal proceedings, the Supreme Court has not relaxed traditional Fourth Amendment protections.  *See Ferguson v. City of Charleston*, 532 U.S. 67, 83–84 (2001).  Therefore, as alleged, there is no basis to apply the special needs doctrine.

> **B.     K.C. Does Not Plausibly Allege That He Had a Reasonable Expectation of Privacy Under the Fourth Amendment**

This order therefore reaches the merits of K.C.'s Fourth Amendment claim under section 1983.  Applying the traditional Fourth Amendment inquiry, K.C.'s claim must be dismissed because he has not plausibly alleged that he has a reasonable expectation of privacy in the school records at issue sufficient to trigger the Fourth Amendment and its warrant requirement.

"When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' [the Supreme Court has] held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause."  *Carpenter v. United States*, 585 U.S. 296, 304 (2018) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).  However, under the "third party doctrine," for Fourth Amendment purposes, an individual's expectation of privacy in voluntarily disclosed records about them that are kept by others in the ordinary course of business, is reduced.  *Id.* at 314; *see also United States v. Miller*, 425 U.S. 435, 442–43 (1976) (no reasonable expectation of privacy in bank records); *see also Smith,* 442 U.S. at 742 (same for phone numbers dialed).  But the third-party doctrine is not absolute.  The Supreme Court has found a reasonable expectation of privacy in a third-party "record of [a person's] physical movements" as captured by detailed "cell phone location records."  *Carpenter*, 585 U.S. at 310.  In a "narrow" decision, the Supreme Court reasoned that the disclosure at issue was not entirely voluntary, because carrying a cell phone is "indispensable to participation in modern society," and the records at issue were highly sensitive because they amounted to "a detailed chronicle of a person's physical presence compiled every day, every moment, over several years."  *Id.* at 315.

6

In light of the reasoning in *Carpenter*, it is likely that a student has a reasonable expectation of privacy in certain school records. For example, school records containing medical treatment information, psychological evaluations, or other highly sensitive information would likely give rise to such an interest. This is especially the case because, much like the location information in *Carpenter,* the creation of student records at public schools is not the result of an entirely voluntary exposure. After all, children are required to attend school, and therefore have no choice but to subject themselves to whatever record collection the school requires. K.C. likely was never given the choice to withhold the information about his identity and behavior that the school collected in the PSR and BDR.

However, even if K.C.'s disclosure was partially involuntary, it does not appear that the records at issue are sufficiently sensitive or private to give rise to a reasonable expectation of privacy that would trigger the Fourth Amendment and its warrant requirement. The TAC describes the Person Summary Report as containing K.C.'s student ID and contact information, and the Behavior Detail Report as describing K.C.'s behavioral history while attending MAHS. (TAC ¶ 33.) There is no allegation that either report contains medical information, psychological records, or other highly sensitive information. Furthermore, under FERPA, the school records are subject to non-consensual disclosure in a variety of contexts, including to other schools to which the student might apply, for financial aid, to accrediting organizations, to child welfare organizations, for use in the juvenile justice process, or pursuant to a subpoena (not a warrant) for law enforcement purposes. *See* 20 U.S.C. § 1232g(b)(1). Therefore, in light of the nature of the information and the authorization to disclose it via subpoena to the police, Plaintiffs have not plausibly pled that K.C. had a reasonable expectation that the reports at issue would not be disclosed to law enforcement absent a warrant.

Plaintiffs argue that courts in this district have recognized privacy interests in at least some data protected by FERPA. (Dkt. No. 76 at 14 (citing *Cherkin v. PowerSchool Holdings*, *Inc.*, No. 24-cv-02706-JD, 2025 WL 844378, at *3 (N.D. Cal. Mar. 17, 2025)).) But while the disclosure of such data may constitute a violation of privacy rights resulting in liability under

7

state law in some circumstances, that fact alone is not sufficient to allege that the warrantless search and seizure of the information violates the Fourth Amendment, where the information was in a third party's possession. For example, while a bank's unauthorized disclosure of a customer's records could be the basis for tort liability, that customer would still have no reasonable expectation of privacy under the Fourth Amendment in records voluntarily disclosed to, and in the possession of, the bank under *Miller*. 425 U.S. at 442; *see also Carpenter*, 585 U.S. at 316 (clarifying that the decision does "not disturb the application of . . . *Miller*"). Therefore, K.C. has not plausibly alleged a violation of the Fourth Amendment.

## V.     CONCLUSION

For the reasons explained below, the Motions to Dismiss the Second Cause of Action (Dkt. Nos. 73, 75) are **GRANTED**.[2] Dismissal is without leave to amend. In advance of the hearing on the Motions, the Court provided the parties with a tentative ruling consistent with this Order. (Dkt. No. 83, ("Tentative").) Counsel for Plaintiffs was asked at the hearing to describe how Plaintiffs might amend their allegations to state a claim under the Fourth Amendment, consistent with the analysis in the Tentative. Plaintiffs proposed to add allegations clarifying that the references in the BDR to the STARS program, and to an IEP-related proceeding, would allow the reader to infer that K.C. was a "special needs student" with a "mental health related impairment," but conceded that the records did not disclose information about K.C.'s specific impairment or about his treatment. None of the proposed amendments cures the deficiencies identified above. Therefore, further amendment would be futile.

**IT IS SO ORDERED.**

Dated: September 24, 2025

RITA F. LIN
United States District Judge

---

[2] The Court does not reach Defendants' qualified immunity arguments.

8