JOHN L. BURRIS, Esq., Bar No. 69888
KRITHI BASU, Esq., Bar No. 359258
CHRISTOPHER A. DEAN, Esq., Bar No. 550322
**Burris Nisenbaum Curry & Lacy, LLP**
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
John.Burris@bncllaw.com
Chris.Dean@bncllaw.com

EVAN GOLDSEN, Esq., Bar No. 257775
CARLY CHRISTOPHER, Esq., Bar No. 278795
**Special Education Collaboration Project**
3186 Vista Way, Ste. 301
Oceanside, California 92056
Telephone: (408) 493-2140
Facsimile: (415) 276-1845
eg@specialedcollaboration.net
cc@specialedcollaboration.net

Attorneys for Plaintiffs,
K.C., by and through his Guardian ad Litem,
MYISCHA THOMPSON, and D.B., by and
through his Guardian ad Litem, LIBRA WHITE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

K.C., by and through his Guardian ad Litem, MYISCHA THOMPSON; D.B., by and through his Guardian ad Litem, LIBRA WHITE,

                    Plaintiffs,

        vs.

TOWN OF ATHERTON, a municipal corporation; DAVID METZGER, individually and in his official capacity as a police sergeant for the TOWN OF ATHERTON; DIEGO ROMERO, individually and in his official capacity as a police officer for the TOWN OF ATHERTON; IGOR DAVIDOWICH, individually and in his official capacity as a police officer for the TOWN OF ATHERTON; JOSHUA GATTO, individually and in his official capacity as a police officer for the TOWN OF ATHERTON; SEQUOIA UNION HIGH SCHOOL DISTRICT, a municipal corporation; STEPHEN EMMI, individually and in his official capacity, NICK MUYS, individually and in his official capacity, and DOES 1-100, inclusive, individually, jointly, and severally,

                  Defendants.

CASE NO.: 3:24-cv-00507

**FOURTH AMENDED COMPLAINT FOR DAMAGES**

**JURY TRIAL DEMANDED**

## **INTRODUCTION**

1.     This case arose after the Town of Atherton police officers used unwarranted and excessive force against minor K.C. and unreasonably seized minor D.B., two 16-year-old Black boys attending Menlo-Atherton High School ("MAHS"). On April 28, 2023, MAHS administrators called the police on minor K.C., who has an intellectual disability and emotional disturbance impairment. On this particular day, MAHS administrators refused to return his water toy as had been promised, causing K.C. to become distressed. K.C. qualifies for an

Individualized Education Program ("IEP") and does exhibit behaviors associated with his disabilities. Although one was not in place at the time, K.C. did have a behavior intervention plan in his IEP for many years that specifically addressed this type of circumstance and behavior. As a requirement, school staff is encouraged to call on-site credentialed special education teachers to de-escalate situations of this nature. However, police were called instead of an on-site special education credentialed teacher who possessed the skills and experience to assist minor K.C. Menlo-Atherton High School administrators discriminated against K.C. on the basis of his disabilities when they deprived him reasonable accommodations while in a dysregulated state, ordered K.C. off campus, and called the authorities. This created a foreseeable dangerous situation for K.C. which was ultimately realized. As an effort to defuse the situation, minor K.C. left the office and went to the bus stop to go home. However, while outside, minor K.C. was confronted by Atherton police officers who physically slammed him into the ground, shoved a knee into his back, and dragged him into a police car. The officers also detained and handcuffed minor D.B. because he did not want to leave minor K.C. alone with the officers. The officers knew or should have known that minor K.C. had a mental impairment because they were informed over dispatch that he had a mental disability. Nevertheless, both minors, who were unarmed and no threat, were aggressively detained.

2.     A few days after the incident, a school resource officer employed by the Town of Atherton acquired minor K.C.'s FERPA-protected confidential school behavior report from one of the involved MAHS administrators without a subpoena, a lawful search warrant, or the consent of minor K.C. and his guardians.

3.     The incident at the bus stop described herein was captured on Menlo-Atherton High School students' cell phone cameras and published on YouTube, drawing widespread attention. To deflect accountability and the negative attention garnered, MAHS administrators and its governing Board defamed K.C. by publishing false statements about his behavior in the office. The behaviors as described by Menlo-Atherton High School administrators would amount to a crime. After the April 28 incident, DISTRICT failed to maintain a non-hostile

learning environment for K.C. and protect his right to be free from discrimination and retaliation when clearly aware that he had been discriminated against, harmed, and thrust into infamy.

4.      This civil rights and state torts action seeks compensatory and punitive damages from Defendants for violating Plaintiffs' rights under the United States Constitution, federal law governing disability discrimination, and state law in connection with the excessive and unreasonable force used during minor K.C.'s arrest, minor D.B.'s unjustified seizure, the unlawful search and seizure of minor K.C.'s confidential school records a few days after his arrest, and the failure to adequately train and supervise DISTRICT employee administrators.

## JURISDICTION AND VENUE

5.      This action arises under Title 42 of the United States Code, § 1983, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794). Title 28 of the United States Code, §§ 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in the County of San Mateo, California, which is within the judicial district of this Court. This Court also has supplemental jurisdiction over Plaintiffs' state law causes of action under 28 U.S.C. § 1367. Supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the state law claims which are so related to federal claims in this matter that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are believed to reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## PARTIES

7.      Plaintiff K.C. is a minor with an intellectual disability and emotional disturbance. K.C. is disabled because of his intellectual disability and emotional disturbance and is entitled to the legal rights and remedies set forth in the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* and is an individual with exceptional needs within the

meaning of that term under the California Education Code § 56026. Minor K.C. is a person who has a mental impairment that substantially limits one or more major life activities within the meaning of 34 C.F.R. § 104.3(j). Therefore, K.C. is entitled to be free from discrimination based on his disability, under Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act. Minor K.C. at all times herein mentioned is a United States citizen. He appears by and through his Guardian ad Litem, MYISCHA THOMPSON, a competent adult and United States citizen in this action.

8.    Plaintiff D.B., at all times herein mentioned is a United States citizen. He appears by and through his Guardian ad Litem, LIBRA WHITE, a competent adult and United States citizen in this action.

9.    Defendant TOWN OF ATHERTON (hereinafter "TOWN") is an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; at all times herein mentioned, Defendant TOWN has possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the TOWN OF ATHERTON Police Department and its tactics, methods, practices, customs and usage. At all relevant times, Defendant TOWN was the employer of Defendants DAVID METZGER, DIEGO ROMERO, IGOR DAVIDOVICH, GATTO, and DOES-100 Defendants, individually and as peace officers.

10.    Defendant Officer DAVID METZGER, at all times mentioned herein, was a police officer for the TOWN OF ATHERTON Police Department, and is sued in his individual and official capacity.

11.    Defendant Officer DIEGO ROMERO, at all times mentioned herein, was a police officer for the TOWN OF ATHERTON Police Department, and is sued in his individual and official capacity.

12.    Defendant Officer IGOR DAVIDOVICH, at all times mentioned herein, was a police officer for the TOWN OF ATHERTON Police Department, and is sued in his individual and official capacity.

13.    Defendant JOSHUA GATTO, at all times mentioned herein, was a police officer for the TOWN OF ATHERTON Police Department, and is sued in his individual and official capacity.

14.    Defendant SEQUOIA UNION HIGH SCHOOL DISTRICT ("hereinafter "DISTRICT") is a public entity duly incorporated and operating under existing law of the State of California and is located within San Mateo County. DISTRICT receives federal financial assistance. DISTRICT is also a public entity subject to Title II of the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, the requirements of the California state law requiring full and equal access to public program or activities pursuant to Government Code § 11135, *et seq*. School personnel owe students under their supervision a protective duty of ordinary care.

15.    In enacting Title II of the Americans with Disabilities Act, Congress validly abrogated state sovereign immunity, and thus DISTRICT may be sued pursuant to Title II. *Hanson v. Med. Bd. of California*, 279 F.3d 1167, 1170 (9th Cir. 2002). By accepting Federal Rehabilitation Act funds, DISTRICT has waived their sovereign immunity under the Eleventh Amendment to claims brought pursuant to Section 504 of the Rehabilitation Act of 1973. *Pugliese v. Dillenberg*, 246 F.3d 937 (9th Cir. 2003).

16.    Defendant STEPHEN EMMI, at all times mentioned herein, was a vice-principal at MAHS, a public school maintained and operated by DISTRICT, and is sued in his individual and official capacity.

17.    Defendant NICK MUYS, at all times mentioned herein, was a vice-principal at MAHS and is sued in his individual and official capacity.

18.    Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1-100, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will

amend this Complaint to state the names and capacities of DOES 1-100, inclusive, when they have been ascertained.

## ADMINISTRATIVE PREREQUISITES

19.     Plaintiffs are required to comply with an administrative tort claim requirement under California Government Code § 910. Plaintiffs submitted a tort claim under the California Tort Claims Act on June 28, 2023, to TOWN. The claim was rejected on August 10, 2023. Plaintiff K.C. submitted a tort claim under the California Tort Claims Act on October 24, 2023, to DISTRICT.  On December 8, 2023, Plaintiff K.C.'s claim against DISTRICT was deemed rejected by operation of law. DISTRICT Plaintiff has exhausted all administrative remedies pursuant to California law.

## FACTUAL ALLEGATIONS

20.     Plaintiff K.C. is a 16-year-old Black male student at Menlo-Atherton High School ("MAHS") who experiences pervasive feelings of anxiety and depression and has deficits in auditory processing, short term memory, executive functioning, visual motor integration skills, and social language. Minor K.C.'s impairment, at times, can cause him to exhibit signs of frustration and being overwhelmed, which requires positive behavior intervention strategies. In these instances, trauma-informed de-escalation strategies are often at times necessary in order to ensure the safety of minor K.C. As such, minor K.C. requires consistent proactive positive behavior interventions, effective coping skills, and informed de-escalation strategies, which at one point was strongly recommended in his IEP. At no time has DISTRICT offered and provided K.C. an appropriate behavior intervention plan that addresses his behavioral needs nor have they properly trained the staff at MAHS, including Defendants EMMI and MUYS, to implement positive behavior intervention strategies and employ appropriate de-escalation strategies for students with mental health needs.

21.     Minor K.C.'s IEP places him in MAHS's Successful Transition Achieved with Responsive Support ("STARS") program. Minor K.C. attended one period per school day in the STARS classroom where he received academic, behavioral, and social/emotional special

education support. All students in the STARS program have mental health needs and at times require the direct support of mental health professionals and/or special education teachers who have been trained in trauma-informed de-escalation strategies. Accordingly, when a STARS student is agitated and unresponsive to adult directives, MAHS's policy encourages staff to immediately contact a STARS teacher for that particular student for assistance. To carry this policy out, all administrators at MAHS have been given the cell phone number for each STARS teacher so they may be immediately contacted when a student is dysregulated. Under minor K.C.'s IEP, school staff is not supposed to contact the police in response to an emotional disturbance episode.

22.    On April 28, 2023, at approximately 3:21 pm near MAHS in Atherton, CA, minor K.C. was waiting at a bus stop with minor D.B. and some of their friends after school. MAHS is part of a predominantly white and wealthy school district. That week, students at MAHS played a game called "Senior Assassin" using pool noodle-like water "toys," which the school confiscated. While at the bus stop, minor K.C. learned from his friends that their water toys were returned to them. Minor K.C. excitedly wanted to retrieve his water toy as well so he returned to the school's office to pick it up.

23.    While in the Principal's office, minor K.C. politely asked the school secretary for his water toy, which was located behind the secretary. The secretary was about to hand the water toy to minor K.C. when Defendant STEPHEN EMMI suddenly came out of his office and instructed the secretary not to give minor K.C. his water toy. Defendant EMMI began speaking to minor K.C. in a demeaning and confrontational manner, repeatedly telling him that he was not going to get his toy. Defendant EMMI did not implement de-escalation strategies, in fact, his actions escalated K.C. Minor K.C. asked Defendant EMMI for his toy back several times, but Defendant EMMI loudly stated, "Who is the adult here?" When minor K.C. tried to reach to retrieve his property, Defendant EMMI forcibly grabbed the toy and physically pushed into minor K.C.'s body. Minor K.C. became frustrated by the fact that he was not allowed to have his water toy even though his friends had been given theirs; as a result, minor K.C. became

emotionally distressed and began to shout at Defendant EMMI. At no point did minor K.C. touch or spit at Defendant EMMI or anyone else in the office. At some point during the interaction, Defendant EMMI began to surreptitiously record K.C. on his cell phone rather than call a STARS teacher for assistance. Instead of giving minor K.C. space Defendant EMMI did the opposite of what was implemented as a de-escalation tactic and confronted minor K.C.

24.    Defendant NICK MUYS soon intervened and stepped in between minor K.C. and Defendant EMMI. While crying, minor K.C. asked both adults if they could go somewhere and talk about the situation, but Vice Principal Muys said, "No." Vice Principal Nick Muys and Defendant EMMI ordered minor K.C. to leave the office immediately while he was in an agitated state. Minor K.C. then turned around, walked out of the office, and headed back towards the bus stop. At some point while minor K.C. was in the office, one of the school secretaries called the police. During the 911 call, the caller informed the operator that minor K.C. was a "mental health student" who was "easily triggered." On information and belief, all MAHS administrators and staff who were present during the incident on April 28 were aware that minor K.C. qualified for an IEP due to an emotional disturbance.

25.    While at the bus stop, minor K.C. was waiting for the bus with minor D.B. and other friends when TOWN OF ATHERTON police officer, approached them. Upon information and belief, these dispatched officers were aware that minor K.C. suffered from a mental impairment since this information was provided to the 911 operator during the 911 call. Defendant METZGER asked to speak to minor K.C., but minor K.C. informed Defendant METZGER that he was a minor and could not talk to him. Subsequently, Defendant METZGER stepped in front of minor K.C. and informed minor D.B. and their friends to leave. Minor K.C. was fearful and confused and did not understand why he was being singled out.  Minor K.C. told his friends, including minor D.B., to stay next to him. Minor D.B. loudly reminded Plaintiff K.C., in front of Defendant METZGER, that he was a minor and that "no officer can legally talk to him." Defendant METZGER then commanded minor D.B. to "start walking right now." At this point, minor K.C. told Defendant METZGER, "That's my brother," referring to minor D.B.

Defendant METZGER then instructed Defendant ROMERO to "book this guy [minor D.B.] up."

26.    Defendant ROMERO roughly grabbed minor D.B.'s wrist and arm, shoved him face forward into a wooden fence that was behind the boys, handcuffed him, and forced him to sit down on the ground. As minor K.C. watched, more officers came up behind him. Defendant METZGER then grabbed minor K.C.'s shoulder from behind. This scared minor K.C. since he does not like to be touched, so he stated, "Please don't touch me," while putting his hands up and backing away out of fear. Defendant METZGER then suddenly slammed minor K.C. onto the ground. Minor K.C. had recently had surgery on a hernia, so he was in immense pain when he hit the ground. Although minor K.C.'s friends shouted to the officers that minor K.C. had just had surgery, Defendant METZGER rolled minor K.C. onto his stomach and shoved a knee into his back while handcuffing him with Defendant ROMERO's assistance. At this point, minor K.C. was in extreme pain, so he began to cry and begged Defendant METZGER to stop hurting him. Minor K.C. then shouted out his mother's phone number to his friends, telling them to contact her.

27.    After a bit, one of the officers pulled minor K.C.'s arm to lift him up, further injuring minor K.C. Defendant Officer IGOR DAVIDOVICH joined officers in detaining minor K.C., who was not resisting. Officers dragged minor K.C. to a police car. The officers then picked up minor K.C., putting him in a horizontal-style position, and put him into the police patrol car face forward. Throughout this entire encounter, minor K.C. asked the officers why they were arresting him, but the officers did not answer him.

28.    The officers took minor K.C. to the Atherton police station and called his grandmother. The officers kept minor K.C. in handcuffs while he waited, even though he was cooperating. The officers only took off the handcuffs to take minor K.C.'s picture. Finally, the officers read minor K.C. his *Miranda* rights and released him when his grandmother arrived approximately 15 minutes later.

29.     While minor K.C. was taken to the police station, minor D.B. remained handcuffed and seated on the ground at the bus stop. When minor D.B. asked Defendant ROMERO why he had been detained, Defendant ROMERO falsely stated that minor D.B. was "in the way" when Defendant METZGER wanted to speak to minor K.C., even though minor D.B. was simply standing next to minor K.C. without obstructing the officer's interaction with minor K.C. Minor D.B. asked for his handcuffs to be removed, but Defendants METZGER and ROMERO insisted that minor D.B. had to have a conversation with them before they would consider removing the handcuffs. Defendant METZGER also asked another officer if they could put minor D.B. in the back of his police car. When minor D.B. and his friend protested, Defendant METZGER told minor D.B. that this was his last chance to have a conversation with him. Minor D.B. was forced into fearful acquiescence. Only after Defendant METZGER explained that minor D.B. was handcuffed for not listening to his instruction to leave minor K.C., Defendant METZGER removed minor D.B.'s handcuffs. Defendant METZGER and the other officers then asked minor D.B. for his identification, address, and mother's phone number. After calling minor D.B.'s mother, Defendant METZGER informed Plaintiff D.B. that he was free to leave.

30.     As a result of this incident, which was solely caused by MAHS administrators' and TOWN OF ATHERTON police officers' inability to properly communicate and interact with minor K.C., MAHS retaliated against minor K.C. by suspending minor K.C. from school for 5 days.

31.     Several MAHS students recorded the TOWN OF ATHERTON police officers' unlawful restraint, assault, and arrest of minor K.C. and minor D.B. on their cell phones and published the videos online. Major news outlets picked up the story, bringing national attention to Plaintiffs and MAHS.

32.     Immediately following the April 28 incident, MAHS Principal, Karl Losekoot, convened a meeting among staff and affirmed that the actions of administration on April 28 were appropriate and if the same circumstances were to arise in the future, the police should be

called. Mr. Losekoot alleged that minor K.C. had committed a crime and actively promoted a hostile learning environment for minor K.C. and all other similarly situated students at MAHS. At some point prior to May 8, 2023, an unknown employee of DISTRICT played the surreptitious recording captured by Defendant EMMI to the DISTRICT Board of Trustees. Minor K.C.'s parent, MYISCHA THOMPSON, by and through her legal representatives has requested on multiple occasions a copy of the surreptitious recording captured by Defendant EMMI. To date, DISTRICT has not provided minor K.C. a copy. On May 8, 2023, DISTRICT convened a Manifestation Determination meeting with minor K.C.'s IEP team to determine if the conduct on April 28, 2023 was caused by or had a direct and substantial relationship to Plaintiff K.C.'s disabilities, or if the conduct on April 28, 2023 was the direct result of MAHS's failure to implement minor K.C.'s IEP. After the meeting concluded, Plaintiff K.C.'s legal representatives received minor K.C.'s police report from the Atherton Police Department. Included in the police report were signed and dated witness statements from various school administrators, including Defendant EMMI and Defendant MUYS. Each statement is dated May 2, 2023, except for Defendant EMMI's, which is dated May 3, 2023. The police report also included a Person Summary Report that contained minor K.C.'s personal identifying information, including his student ID and contact information. Additionally, the police report included a Behavior Detail Report that details minor K.C.'s behaviors exhibited at MAHS since 9th grade and reveals that minor K.C. has an IEP for a disability. Both the Person Summary Report and the Behavior Detail Report are records protected by the Family Educational Rights and Privacy Act ("FERPA") and must not be disclosed without parental consent or a court order. Minor K.C.'s mother, MYISCHA THOMPSON, never provided consent for SUHSD to release minor K.C.'s educational records to the Atherton Police Department, and no court order has been issued compelling such release.

33.    MAHS School Resource Officer DIMITRI ANDRUHA reported that he received the signed and dated witness statements on May 2, 2023, six days prior to minor K.C.'s Manifestation Determination meeting. Officer ANDRUHA also reported that he received the

Behavior Detail Report from the "school administration" on May 2, 2023, and that "the report shows a pattern of violent behavior dating back to 9/1/2021." Neither Officer ANDRUHA nor the unidentified school administrator who gave him the Behavior Detail Report followed applicable DISTRICT policies and protocols or FERPA's procedural protections governing the disclosure of confidential student records before the disclosure took place. Additionally, the police report indicated that a cell phone video of minor K.C., captured by Defendant EMMI, was taken as evidence by the Atherton Police Department.

34.    Prior to April 28, 2023, Defendant EMMI, on numerous occasions, provoked conflicts with K.C. at MAHS, creating a hostile learning environment. Defendant EMMI targeted many students of color with disabilities at MAHS in a hostile manner prior to April 28, 2023. Defendant MUYS' knowledge of Defendant EMMI'S propensity to provoke conflicts with students of color with disabilities, and minor K.C. in particular, is what prompted him to intervene on April 28, 2023.

35.    Prior to April 28, 2023, Defendant DISTRICT failed to train either Defendant MUYS or EMMI in the safe and effective use of de-escalation techniques and strategies.

## DAMAGES

36.    As a consequence of Defendants' violation of Plaintiffs' federal civil rights under 42 U.S.C. § 1983 and the Fourth Amendment, Plaintiffs were physically, mentally, emotionally, and financially injured and damaged as a proximate result of Defendants' wrongful conduct.

37.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees and/or costs pursuant to statute(s) in the event that they are the prevailing parties in this action under 42 U.S.C. §§ 1983 and 1988. Plaintiffs are also entitled to punitive damages under 42 U.S.C. §§ 1983 and 1988.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 - Excessive Force)

**(Plaintiffs against Defendants METZGER, ROMERO, DAVIDOVICH, GATTO, and DOES 1-100)**

38.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 37 of this Complaint.

39.  42 U.S.C. § 1983 provides in part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress."

40.  Plaintiffs had a firmly established right under the Fourth Amendment to be free from official infliction of physical abuse, assault, battery, and intentional infliction of emotional distress, unreasonable search and seizure, and to be free from excessive force being used against him.

41.  Defendants interfered with Plaintiff K.C.'s right to be free from the use of excessive force when Defendant METZGER slammed Plaintiff K.C. onto the ground and shoved his knee in Plaintiff K.C.'s back while handcuffing him with Defendant ROMERO's assistance. Plaintiff K.C.'s rights were further infringed upon when Defendants METZGER, DAVIDOVICH, ROMERO, and GATTO roughly pulled Plaintiff K.C. off the ground by his arms and dragged him to a police car.

42.  Defendants interfered with Plaintiff D.B.'s right to be free from the use of excessive force when Defendant ROMERO grabbed Plaintiff D.B.'s wrist and arm, shoved him against a wooden fence that was behind him, handcuffed him, and forced him to sit down on the ground.

43.  Defendants METZGER, ROMERO, DAVIDOVICH, and GATTO's actions demonstrated a conscious disregard to Plaintiffs' rights, who were two terrified, unarmed children who did not pose any threat of harm to anyone on the scene.

44.    As a result of their misconduct, Defendants are liable for Plaintiffs' physical, mental, and emotional injuries, either because they were integral participants in the excessive force, or because they failed to intervene to prevent these violations.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION
### (*Monell* – 42 U.S.C. § 1983)
### (Plaintiffs against Defendants TOWN and DOES 1-100)

45.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 44 of this Complaint.

46.    Plaintiffs are informed and believe and thereon allege that high-ranking TOWN OF ATHERTON officials, including DOES 1-100, and/or each of them, knew and/or reasonably should have known that their police officers, including Defendants METZGER, ROMERO, DAVIDOVICH, and GATTO, were either untrained or improperly trained in the following areas:

    a.    Utilizing reasonable opportunities to de-escalate a situation involving a minor subject with a mental impairment, including the use of effective communication that is not confrontational, escalating, or demanding; reasonably creating time and distance to help de-escalate and to allow the use of effective communication before employing excessive physical force.

    b.    That the failure of a minor subject, especially one who is known or appears to be suffering from a mental impairment, to comply with orders while not presenting an imminent threat of serious injury or harm, does not justify the use of excessive physical force.

47.    These policy, practice, and training failures were a substantial factor and moving force in the violation of Plaintiffs' rights.

48.    Despite having such notice, Plaintiffs are informed and believe and thereon allege that Defendants TOWN OF ATHERTON and DOES 1-100, and/or each of them,

approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by TOWN OF ATHERTON Police Department officers.

49. Plaintiffs are further informed and believe and thereon allege that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by Defendants METZGER, ROMERO, DAVIDOVICH, GATTO, and DOES 1-100, and/or each of them, and the policy, practice, and training deficiencies identified herein, Defendants TOWN OF ATHERTON, DOES 1-100, and/or each of them, encouraged these Defendant officers to continue their course of misconduct, resulting in the violation of Plaintiffs' rights as alleged herein.

50. The aforementioned acts and/or omissions and/or deliberate indifference by high-ranking TOWN OF ATHERTON officials, including Defendants DOES 1-100, and each of them, resulted in the deprivation of Plaintiffs' constitutional rights, including but not limited to, the right to be free from the use of excessive force, as guaranteed by the Fourth Amendment to the United States Constitution.

51. As against Defendant TOWN OF ATHERTON and Defendants METZGER, ROMERO, DAVIDOVICH, GATTO, and/or DOES 1-100 in their capacity as police officer(s) for TOWN OF ATHERTON, Plaintiffs further allege that the acts and/or omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of the TOWN OF ATHERTON Police Department tantamount to a custom, policy, or repeated practice of condoning and tacitly encouraging the abuse of police authority, and a inherent disregard for the constitutional rights of citizens. Plaintiffs further allege that these acts and/or omissions illustrate that officers of the TOWN OF ATHERTON Police Department are improperly trained in responding to mental health crises.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
**(Negligence)**

**(Plaintiff K.C. against Defendants TOWN, METZGER, ROMERO, DAVIDOVICH, GATTO, DISTRICT, MUYS, EMMI, and DOES 1-100)**

52.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 51 of this Complaint.

53.     An individual is liable for injuries caused by failure to exercise reasonable care in the circumstances. A cause of action for negligence arises when there is a legal duty to use due care, there is a breach of the legal duty, and the breach is the proximate or legal cause of the resulting injury.

54.     At all times, Defendants METZGER, ROMERO, DAVIDOVICH, and GATTO were subject to a duty of care to avoid causing unnecessary physical harm and distress to persons through their use of force and making of arrests and detentions. Defendant EMMI and MUYS have a heightened duty of care given their special relationship with minor K.C., a student attending their school. This heightened duty of care not only requires both to avoid causing unnecessary physical harm and distress when interacting with a minor with disabilities, but to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally. Defendants had notice of Plaintiff K.C.'s mental impairment as well as Plaintiff K.C.'s status as minors, but without due care when interacting with Plaintiff, Defendants injured Plaintiff. The wrongful conduct of Defendants, as set for herein, did not comply with the standard of care to be exercised by reasonable persons, proximately causing Plaintiff to suffer injuries and damages as set forth herein.

55.     Pursuant to California Government Code Section 815.2(a), Defendants TOWN OF ATHERTON and DISTRICT are vicariously liable to Plaintiff K.C. for his injuries and damages suffered as alleged herein, incurred as a proximate result of the aforementioned wrongful conduct of Defendants METZGER, ROMERO, DAVIDOVICH, GATTO, MUYS, and EMMI.

56.     As a direct and proximate result of Defendants' negligent conduct, Plaintiff suffered, and continues to suffer, damages including, but not limited to severe physical injury, severe emotional and mental distress, and Plaintiff's emotional tranquility.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION
**(Assault/Battery)**
**(Plaintiff K.C. against Defendants TOWN, METZGER, ROMERO, DAVIDOVICH, GATTO, EMMI, and DOES 1-100)**

57.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 56 of this Complaint.

58.     Defendants METZGER, ROMERO, DAVIDOVICH, GATTO, and EMMI acted with intent to cause harmful or offensive contact or threatened to touch Plaintiff K.C. in a harmful or offensive manner. Plaintiff K.C. reasonably believed he was about to be touched in a harmful or offensive manner. It reasonably appeared to Plaintiff K.C. that Defendants were about to carry out the threat. Plaintiff K.C. did not consent to Defendants' harmful contact. Battery occurred when Defendants METZGER, ROMERO, DAVIDOVICH, and GATTO made contact with and harmed Plaintiff K.C. by slamming him onto the ground, shoving a knee into his back while handcuffing him, roughly pulling him up to his feet, and dragging him to a police car. Battery also occurred when Defendant EMMI pushed into Plaintiff K.C. while Plaintiff K.C. tried to reach to retrieve his water toy from the school secretary. Plaintiff K.C. sustained bodily injuries as a result of Defendants' assault and battery. Defendants' conduct was a substantial factor in causing Plaintiff K.C.'s harm.

59.     Pursuant to California Government Code Section 815.2(a), Defendant TOWN OF ATHERTON is vicariously liable to Plaintiff K.C. for injuries and damages suffered as alleged herein, incurred as a proximate result of the aforementioned wrongful conduct of Defendants METZGER, ROMERO, DAVIDOVICH, EMMI and GATTO.

60.     As a result, Defendants are liable for assault and battery.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress)**
**(Plaintiff K.C. against Defendants TOWN, METZGER, ROMERO, DAVIDOVICH,**
**GATTO, EMMI, and DOES 1-100)**

61.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 60 of this Complaint.

62.     Defendants METZGER, ROMERO, DAVIDOVICH, and GATTO's above-described conduct in brutally throwing down, handcuffing, and dragging Plaintiff K.C., a terrified, unarmed child with a mental impairment, to a police car was extreme, unreasonable, and outrageous.

63.     Defendant EMMI's above-described conduct in confronting, demeaning, and physically pushing into Plaintiff K.C., despite being aware of Plaintiff K.C.'s disabilities, after Plaintiff K.C. asked to retrieve his property, was extreme, unreasonable, and outrageous.

64.     In engaging in the above-described conduct, Defendants intentionally ignored or recklessly disregarded the foreseeable risk that Plaintiff would suffer extreme emotional distress as a result.

65.     Under California Government Code Section 815.2(a), Defendant TOWN OF ATHERTON is vicariously liable to Plaintiff K.C. for injuries and damages suffered as alleged herein, incurred as a proximate result of the aforementioned wrongful conduct of Defendants METZGER, ROMERO, DAVIDOVICH, EMMI and GATTO.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**(Cal. Civ. Code § 52.1 – Violation of Bane Act)**
**(Plaintiff K.C. against Defendants TOWN, METZGER, ROMERO, DAVIDOVICH,**
**GATTO, EMMI, and DOES 1-100)**

66.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 65 of this Complaint.

67.     California Civil Code Section 52.1 authorizes suit against anyone who by threats, intimidation, or coercion interferes with the exercise or enjoyment of rights secured by the state

or federal Constitutions or laws without regard to whether the victim is a member of a protected class. Civil Code Section 52(a) provides for damages up to three times actual damages but a minimum of $4,000 for each violation.

68.    Defendants' above-described conduct threatened Plaintiff K.C.'s federal constitutional right to be free and secure from unreasonable searches and seizures and Plaintiff K.C.'s state constitutional right to protection from bodily restraint, harm, or personal insult.

69.    Defendants METZGER, ROMERO, DAVIDOVICH, and GATTO interfered with and demonstrate a reckless disregard for Plaintiff K.C.'s right to be free and secure from unreasonable searches and seizures and Plaintiff K.C.'s right to be protected from bodily restraint, harm, or personal insult by slamming him onto the ground when he was unarmed and not posing a threat to anyone on the scene, shoving a knee into his back while handcuffing him, roughly pulling him up to his feet, and dragging him to a police car, all accomplished through force, threats, intimidation, and coercion.

70.    Defendant EMMI interfered with and demonstrated a reckless disregard for Plaintiff K.C.'s right to be protected from bodily restraint, harm, or personal insult by physically blocking and pushing into Plaintiff K.C. when Plaintiff K.C. tried to reach to retrieve his water toy from the school secretary.

71.    Under California Government Code Section 815.2(a), Defendant TOWN OF ATHERTON is vicariously liable to Plaintiff K.C. for injuries and damages suffered as alleged herein, incurred as a proximate result of the aforementioned wrongful conduct of Defendants METZGER, ROMERO, DAVIDOVICH, and GATTO.

72.    As a direct and proximate result of Defendants' violation of Civil Code Section 52.1, Plaintiff K.C. suffered violation of his constitutional, state, and statutory rights, and suffered damages as set forth herein.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
**(29 U.S.C. § 794 - Violation of Section 504 of the Rehabilitation Act)**

**(Plaintiff K.C. against Defendant DISTRICT)**

73.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 72 of this Complaint.

74.     Minor K.C. is informed and believes, and on that basis alleges, that DISTRICT was, at all relevant times, a recipient of federal funds, and that part of those funds were used in the operations, construction and/or maintenance of the specific public facilities and programs described herein and the activities that take place therein.

75.     Minor K.C. is a qualified individual with a disability. K.C. has intellectual disability which substantially limits his major life activities of, inter alia, socialization, mental health, behavior, communications, and adaptive functioning.

76.     By its actions or inactions in denying meaningful and equal access to educational services, DISTRICT discriminated against minor K.C. by failing to provide an appropriate education (including aid, benefits, or services) pursuant to 34 C.F.R. § 104.33. As a result, DISTRICT violated K.C.'S rights under Section 504 of the Rehabilitation Act of 1973.

77.     The discrimination alleged herein was based on K.C.'s unique needs because of his intellectual disability and emotional disturbance. K.C. required a behavior intervention plan and school staff trained in appropriate de-escalation strategies in order to access the school setting.

78.     By its actions or inactions in denying meaningful and equal access to educational services, DISTRICT discriminated against K.C. by failing to provide an appropriate education (including aid, benefits, or services) pursuant to 34 C.F.R. § 104.38. As a result, DISTRICT violated K.C.'s rights under Section 504 of the Rehabilitation Act of 1973.

79.     By its actions or inactions, DISTRICT violated Section 504 of the Rehabilitation Act of 1973 by failing to afford K.C. an equal opportunity to participate in or benefit from the aid, benefit, and services provided by a public education in violation of 34 C.F.R. § 104.4. As a result, the DISTRICT violated K.C.'s rights under Section 504 of the Rehabilitation Act of 1973.

80.     By its actions or inactions, DISTRICT violated Section 504 of the Rehabilitation Act of 1973 by denying K.C. the reasonable accommodations necessary to achieve meaningful access to his education. K.C. could not meaningfully access his learning environment without a behavior intervention plan and school staff trained in appropriate de-escalation strategies. The failure to provide these obvious accommodations violated minor K.C.'s rights under Section 504 of the Rehabilitation Act of 1973.

81.     The discrimination described herein constitutes a violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794, et seq.), which provides that, "no otherwise qualified individual with a disability shall, solely by the reason of his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."

82.     DISTRICT acted with deliberate indifference to K.C.'s rights under Section 504, as described herein, by knowingly failing to provide K.C. the supports and services he required to access his education to the same extent as his non-disabled peers. Moreover, K.C.'s required supports and services were obvious to the casual observer.

83.     As a direct and proximate result of DISTRICT's discrimination, K.C. suffered damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
**(42 U.S.C. § 12132 - Violation of Title II of the Americans with Disabilities Act of 1990)**
**(Plaintiff K.C. against Defendant DISTRICT)**

84.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 83 of this Complaint.

85.     At all relevant times, K.C. was entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990 ("Title II"). Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 U.S.C. § 12131, Section 201 of the ADA. DISTRICT is a "public entity" and subject to Title II.

86.     Pursuant to 42 U.S.C. § 12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity. K.C. was at all times relevant, a qualified individual with a disability, as defined herein.

87.     The discrimination alleged herein was based on K.C.'s unique needs because of his intellectual disability and emotional disturbance. K.C. required additional behavior supports (including a behavior intervention plan and staff trained in appropriate de-escalation strategies) to access the school setting.

88.     There was no federal or state guidance that prevented DISTRICT from providing K.C. with these services.

89.     By its actions or inactions in denying equal access to educational services, DISTRICT discriminated against K.C. by failing to provide adequate behavior supports such that K.C. could meaningfully access the school setting.

90.     DISTRICT acted with deliberate indifference to K.C.'s rights under Title II, as described herein, by knowingly failing to provide K.C. the supports and services he required to benefit from her education. Moreover, K.C.'s required supports and services were obvious.

91.     As a result of DISTRICT's failure to comply with its duty under Title II, K.C. has suffered damages including special and general damages according to proof.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## NINTH CAUSE OF ACTION
### (Negligent Supervision and Training)
### (Plaintiff K.C. against Defendant DISTRICT)

92.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 91 of this Complaint.

93.    At all relevant times, Defendant DISTRICT had a duty to supervise Defendants EMMI and MUYS to ensure that their actions complied with all laws and regulations, including Education Code § 44807, and their common law duties.

94.    Defendant DISTRICT, through their employees, knew or should have known of Defendant EMMI's propensity to provoke conflicts with students of color with disabilities, and breached their ordinary duty of care owed to minor K.C. by failing to provide reasonable supervision over Defendant EMMI. Defendant DISTRICT, through their employees, knew or should have known of Defendant EMMI's and MUYS' lack of adequate de-escalation training and have breached their duties to supervise and train Defendants EMMI and MUYS by failing to adequately train each in appropriate de-escalation techniques and strategies.

95.    Pursuant to California Government Code § 815.2, Defendant DISTRICT is vicariously liable to Plaintiff K.C. for his injuries and damages suffered as alleged herein, incurred as a proximate result of the aforementioned wrongful conduct of Defendants EMMI and MUYS.

96.    As a direct and proximate result of Defendant DISTRICT's negligent supervision and training, K.C. suffered, and continues to suffer, damages including, but not limited to severe physical injury, severe emotional and mental distress, and K.C.'s emotional tranquility.

Wherefore, Plaintiff prays for relief as hereinafter set forth.

### TENTH CAUSE OF ACTION
**(Invasion of Privacy)**
**(Plaintiff K.C. against Defendants SEQUOIA UNION HIGH SCHOOL DISTRICT and DOES 1-100)**

97.    Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 96 of this Complaint.

98.    Plaintiff K.C. has the right to privacy under Article I, Section 1 of the California Constitution and California Education Code section 49076.

99.    MAHS School Resource Officer DIMITRI ANDRUHA and DOE 1, an unknown District employee, invaded Plaintiff K.C.'s privacy rights when DOE 1 disclosed Plaintiff

K.C.'s behavior detail report, containing FERPA-protected confidential information about Plaintiff K.C., to Officer ANDRUHA without a subpoena, a lawful search warrant, or the consent of Plaintiff K.C. and his guardians authorizing them to do so and without complying with applicable access and disclosure procedures under FERPA and DISTRICT policy. Upon information and belief, Officer ANDRUHA acted in concert with DOE 1 to inappropriately obtain and exploit Plaintiff's confidential, legally protected reports. Officer ANDRUHA and DOE 1 knew or should have known that obtaining personal and confidential documents requires certain procedures such as a subpoena, a lawful search warrant, and/or consent. Upon information and belief, Officer ANDRUHA and DOE 1 used Plaintiff K.C.'s records in a way that they should not have been used. Officer ANDRUHA used Plaintiff K.C.'s behavior detail report to identify and interview witnesses that Plaintiff K.C. had prior encounters with more than one and one-half years prior to the incident which gives rise to this action. Officer ANDRUHA subsequently used these prior statements and encounters in Plaintiff's file to bolster facts in support of criminal charges against Plaintiff. Officer ANDRUHA then published Plaintiff's behavior detail report by attaching it to his written portion of the police report.

100.    At all times mentioned herein, School Resource Officer ANDRUHA acted as an agent for Defendant SEQUOIA UNION HIGH SCHOOL DISTRICT with actual or apparent authority from Defendant DISTRICT, and DOE 1 acted within the scope of their employment with SEQUOIA UNION HIGH SCHOOL DISTRICT. Defendant SEQUOIA UNION HIGH SCHOOL DISTRICT is therefore responsible and vicariously liable for the harm caused by School Resource Officer ANDRUHA's conduct as an agent of Defendant DISTRICT with actual or apparent authority, and DOE 1's conduct within the scope of their employment.

101.    As a result, Defendants are liable for disclosing and misusing Plaintiff K.C.'s confidential school records and invading his privacy.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.


**JURY DEMAND**

Plaintiffs hereby demand a jury trial in this action.

## **PRAYER**

WHEREFORE, Plaintiffs pray for relief, as follows:

1.      For general damages according to proof;

2.      For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;

3.      For punitive damages and exemplary damages in amounts to be determined according to proof as to defendants METZGER, ROMERO, DAVIDOVICH, GATTO, MUYS, EMMI, and DOES 1-100 and/or each of them;

4.      Any and all permissible statutory damages;

5.      For reasonable attorney's fees pursuant to California Code of Civil Procedure § 1021.5;

6.      For cost of suit herein incurred; and

7.      For such other and further relief as the Court deems just and proper.


Dated: November 21, 2025          **BURRIS NISENBAUM CURRY & LACY, LLP**


                                                      */s/ John L. Burris*
                                                      John L. Burris
                                                      Krithi Basu
                                                      Christopher A. Dean
                                                      Attorneys for Plaintiffs


Dated: November 21, 2025          **SPECIAL EDUCATION COLLABORATION PROJECT**


                                                      */s/ Evan Goldsen*
                                                      Evan Goldsen
                                                      Carly Christopher
                                                      Attorneys for Plaintiffs